## BOWIE *v.* HUME.

PROMISSORY NOTES; ENDORSEMENT; NOTICE OF PROTEST, WAIVER
OF; ESTOPPEL; FORGED ENDORSEMENT; EVIDENCE; WITNESSES.

1. A memorandum at the foot of a promissory note, written and
   signed by the makers at the time of the execution of the note,
   giving them the privilege of paying all or any part of the note
   before maturity, constitutes part of the note, and makes it
   payable on or before maturity at the option of the makers;
   and such memorandum does not affect the negotiability of the
   note.
2. Where such a memorandum is not appended to the note after its

delivery to a *bona fide* holder for value, although it may have been appended after the making of the note and its endorsement, an endorser is not discharged from liability.

3. Where there are joint endorsers of a promissory note, notice of its dishonor must be given to each, in order to preserve the right of contribution *inter sesse.*

4. A waiver of demand, protest and notice is ineffectual unless made by all endorsers interested in the question of contribution *inter sesse.*

5· Where a *bona fide* holder of a note for value has taken the note upon the faith of the genuineness of two endorsements, the second endorser, whose endorsement was made before the delivery of the note, is estopped to deny the genuineness of the signature of the first endorser.

6. One whose endorsement upon a note is alleged to have been forged, but who thereafter signs a waiver of notice endorsed on the note, thereby adopts the signature of the endorsement.

7. An endorser of a note is not rendered incompetent to testify as an interested party in a suit brought against him by the holder of the note and continued after his death by his personal representative, by Sec. 858, R. S., where the transaction involved was conducted by an agent of the deceased, who is a competent witness for the substituted plaintiff, to support his version of the transaction.

8. Where since a former trial a witness has become disqualified to testify without any fault or agency of his own, the testimony then given by him may be read in evidence at the second trial,. although he is still living.

No. 755. Submitted April 13, 1898. Decided October 21, 1898.

HEARING on an appeal by the plaintiff from a judgment on verdict in an action on a promissory note. *Reversed.*

The COURT in its opinion stated the case as follows:

This action was brought on the 12th of September, 1884, by William B. Bowie, since deceased, against the appellee, as endorser, to recover the balance due on a certain promissory note, made by Hall and Hume, and endorsed by the defendant. The note, and the endorsements thereon, are in the following terms:

"WASHINGTON, D. C., February 1st, 1877.

"Two years after date we promise to pay to the order of A. H. Pickrell and Frank Hume twenty-four thousand,

seven hundred and fifty and $\frac{80}{100}$ dollars, for value received, with interest at eight per cent. per annum, interest payable semi-annually.

　　　　　　(Signed)　　　' "HALL AND HUME."

At the foot of the note was thus written:

" With privilege of paying all or any portion any time before maturity.

　　　　　　(Signed)　　　　"HALL AND HUME."

On the back of the note was thus endorsed: " A. H. Pickrell. Frank Hume." And following this is the following endorsement:

" We hold ourselves responsible, jointly and severally, for the within note, without demand, notice or protest.

　　　　　　　　　　　　　"FRANK HUME,
　　　　　　　　　　　　　"A. H. PICKRELL.

" February 4th, 1879."

And this further indorsement: " $15,000 paid by notes of Hume & Cleary, October 21, 1881."

The original declaration contained three special counts upon the promissory note, but without any reference whatever to the memorandum added at the foot of the note, whereby privilege was reserved to the makers of paying all or any portion of the sum mentioned in the note at any time before maturity of the note. This omission in the declaration was upon the theory that the memorandum or addendum constituted no part of the note. There were also added the common money counts, among which is the common count for money found to be due upon account stated between the parties.

Pleas and replications were filed and issues made up; but before trial leave was obtained and the declaration was amended by the addition of three other special counts. In this amended declaration the addendum at the foot of the note, reserving the privilege of paying the whole or any part of the sum at any time before maturity, is treated as constituting a part of the note, and thus meeting and obvi-

ating the possible objection of variance between allegation and proof.

To these additional counts in the amended declaration the defendant pleaded that he did not promise as alleged.

The case came on for trial in the Supreme Court of the District before Mr. Justice Merrick, in May, 1888, and resulted in a verdict for the defendant. That verdict, however, was set aside, without reference to the merits of the case, and a new trial was granted. At that trial before Mr. Justice Merrick, both the plaintiff and defendant were examined, and cross-examined, as witnesses, and their testimony was stenographically reported under the sanction of the court.

Before the trial of the cause, resulting in the judgment appealed from, William B. Bowie, the original plaintiff, died testate, making Annie H. Bowie, his wife, the sole executrix of his will; and, upon the suggestion of the death of the plaintiff, the executrix was made a party plaintiff. In January, 1891, the death of Annie H. Bowie, the widow and sole executrix of the will of William B. Bowie, was suggested, and Richard Irving Bowie, as administrator *de bonis non, with the will annexed,* was substituted as party plaintiff; and he, in his representative capacity, was the plaintiff in the trial of the cause at the last trial.

At the trial of the cause, resulting in the verdict and judgment from which the present appeal is taken, in May, 1897, the plaintiff offered *prima facie* evidence of the due execution and delivery of the note, and of the endorsements thereof. The defendant then gave evidence tending to show that the signature of A. H. Pickrell, one of the payees, on the back of the note, was not genuine; and by the defendant himself that the memorandum at the foot of the note was not there when he put his name on the back of the note as endorser, that is to say, he did not see it; that he endorsed the note first; that at the maturity of the note it was in the hands of John A. Baker for collection, and that Baker was

13 Ct. App.—20

the agent of Bowie, the holder of the note. That on the last day of grace Baker wrote to the defendant and requested him to call at his (Baker's) office, and in response, the defendant called upon Baker, and was told by the latter that he proposed to substitute a waiver for protest, and that if the defendant would sign the waiver which he (Baker) had written on the back of the note, that he (Baker) would procure the signature of Pickrell to the waiver. That thereupon, the defendant, confiding in the undertaking of the agent (Baker), affixed his name to the waiver written on the back of the note. That Baker intrusted the note to his clerk to go with Thomas L. Hume, in his buggy, to the house of A. H. Pickrell in Georgetown, to get the signature of Pickrell to the waiver written upon the note, with instructions that he was under no circumstances to part with the possession of the note. That the clerk, in company with said Thomas L. Hume, went to the house of Mr. Pickrell, in Georgetown, but when they reached the house the said Thomas L. Hume explained to the clerk of Baker that his horse was restive, and as Mr. Pickrell was sick and confined to his room, that he, said Hume, would take the note, and go in the house and get the signature of Pickrell, and that the clerk should remain outside and take care of the horse; and the note was accordingly delivered to Hume for the purpose of procuring the signature of Pickrell. That in a few minutes Hume came out of the house and delivered the note back to the possession of the clerk, with the name of Pickrell apparently signed to the waiver on the note. The defendant then offered proof tending to show that the signature of Pickrell to the waiver was not genuine but forged.

This evidence, though controverted and opposed in many important particulars by evidence adduced on the part of the plaintiff, was offered as tending to show, or at least to justify, the inference, that the signatures of A. H. Pickrell, appearing on the note, both as endorser and that signed to the waiver of protest and notice, were forged and counterfeit,

and that the forging and counterfeiting of the signatures
had been done by Thomas L. Hume, now deceased. This
is the defense taken by the defendant to the plaintiff's right
to recover on the note, together with the further contention
that the memorandum appearing at the foot of the note was
placed there after the note had been made by Hall and
Hume, and endorsed by the defendant, and that the note
was thereby materially altered.

On the part of the plaintiff evidence was adduced tend-
ing to establish the genuineness of both of the signatures of
A. H. Pickrell, appearing on the back of the note, and that
the memorandum at the foot of the note, was placed there
at the time the note was made and before the same was
endorsed by the defendant. And the plaintiff further
contends that if it were conceded that such memorandum
had been placed at the foot of the note by the makers
thereof or one of them, after it had been made and endorsed,
such memorandum in no manner affected the negotiable
character of the note, nor did it in any manner affect the
liability of the endorsers of the note, such memorandum, as
to the endorsers, forming no part of the note, and being
wholly immaterial. The defense set up by the defendant is
further met and sought to be repelled by the application of
the principle of estoppel, resulting from the manner of deal-
ing with the note as against the estate of Pickrell, at the
instance of the defendant, and upon the latter's express
promise to pay the balance due on the note after applying
such amount as could be made from Pickrell's estate; and
the further fact that the defendant had procured to be paid
on the note by his brother the sum of $15,000, on October
21, 1881—thus recognizing his liability by reason of his en-
dorsement of the note.

There is no question in the case of the genuineness of
any signature to the note except that of A. H. Pickrell. Both
Pickrell and Thomas L. Hume are dead, the latter being
the son-in-law of the former. The signatures of the makers,

Hall and Hume, both to the body of the note and to the memorandum at the foot thereof, are admitted, and there is no question as to the genuineness of the signatures of the defendant on the back of the note.

[At the trial in the court below, among the prayers for instruction offered by the plaintiff were the following:

"1. The plaintiff is entitled to the verdict upon the pleadings and the evidence in this cause." Refused.

"2. The defendant, Frank Hume, having admitted that he endorsed the note in suit as one of the payees thereof, and that on the day of its maturity he signed his name to these words on the back of the note: 'We hold ourselves responsible, jointly and severally, for the within note without demand, notice or protest—Feb. 4th, 1879,'—if the jury find from the evidence that William B. Bowie received said note in suit from Thomas L. Hume before maturity, and that the consideration thereof was the surrender to Thomas L. Hume of other notes, about to become due, of said Thomas L. Hume or Hall & Hume, endorsed by A. H. Pickrell, the principal and interest whereof made up the amount of the present note in suit, and that at the time of receiving said note in suit and until after the date of its maturity the said William B. Bowie believed that the signatures thereon as payees were the genuine signatures of A. H. Pickrell and Frank Hume, the defendant, the jury are instructed that said defendant is estopped from setting up the defense that the signature of A. H. Pickrell as his copayee is not genuine, and in this view of the case it makes no difference whether the defendant, after he had endorsed the note in suit, entrusted and delivered it to Thomas L. Hume to get the signature of A. H. Pickrell, defendant's copayee, or whether the name of A. H. Pickrell, as one of the payees, was on the back of said note when the same was endorsed by Frank Hume as copayee; and if the jury further believe from the evidence that said signature of A. H. Pickrell as copayee is in fact a forgery or spurious, then their verdict must be for

the plaintiff, it then being immaterial whether the signature of A. H. Pickrell to said words on the back of the note in suit: 'We hold ourselves responsible, jointly and. severally, for the within note without demand, notice or protest—Feb. 4, 1879,' be genuine or not." Refused.

"3. The burden is upon the defendant to satisfy the jury that the signature of A. H. Pickrell on the back of the note in suit, under these words: 'We hold ourselves responsible, jointly and severally, for the within note without demand, notice, or protest—Feb. 4, 1879,' is not the genuine signature of said A. H. Pickrell, and unless said defendant does so satisfy them by a preponderance of the evidence, then their verdict must be for the plaintiff." Refused.

" 4. If the jury find from the evidence that the signature of A. H. Pickrell on the back of the note in suit, under these words: 'We hold ourselves responsible, jointly and severally, for the within note, without demand, notice or protest—Feb. 4, 1879,' is the genuine signature of the said A. H. Pickrell, then it is immaterial whether the endorsement on the note of the name of said Pickrell, as one of the payees, is his genuine signature or not, and their verdict must be for the plaintiff." Granted.

"5. Before the jury can find a verdict in favor of the defendant in this case it is necessary that he, the defendant, should satisfy them by a preponderance of the evidence that John A. Baker, as the agent of William H. Bowie, on the 4th day of February, 1879, and at the time the defendant signed his name on the back of the note in suit, under these words: 'We hold ourselves responsible, jointly and severally, for the within note without demand, notice, or protest—Feb. 4, 1879,' did undertake or agree with the defendant that he would procure the signature of A. H. Pickrell also to the said words, and that he, the said defendant, signed said waiver in consequence of such undertaking and agreement of said Baker, and the burden of proof is upon the defendant to satisfy the jury of all these facts, and should the de-

fendant fail to so satisfy them, their verdict must be for the plaintiff." Refused.

"6. If the jury believe from the evidence that the defendant, Frank Hume, after the death of A. H. Pickrell, on May 2, 1879, requested the original plaintiff, William B. Bowie, not to sue him on the note in suit, but to sue thereon the estate of A. H. Pickrell, and at the same time promised to pay him whatever could not be made out of said estate, and that said Bowie did forbear to sue the defendant and instituted suits against the estate of A. H. Pickrell, which suits were abandoned because the signatures of A. H. Pickrell upon the note in suit were not genuine, and thereupon brought this present suit against the defendant, then their verdict must be for the plaintiff." Refused.

"7. The defendant, Frank Hume, having admitted that he endorsed the note in suit as one of the payees thereof, and that on the day of its maturity, he signed his name to these words on the back of said note: 'We hold ourselves responsible, jointly and severally, for the within note without demand, protest, or notice—Feb. 4, 1879,' if the jury find from the evidence that William B. Bowie received said note in suit from Thomas L. Hume before maturity, and that the consideration thereof was the surrender to Thomas L. Hume of other notes about to become due, of said Thomas L. Hume, or Hall & Hume, endorsed by A. H. Pickrell, the principal and interest whereof made up the amount of the present note in suit, and that at the time of receiving said note in suit and until after the day of its maturity, the said William B. Bowie believed that the signatures thereon as payees were the genuine signatures of A. H. Pickrell and Frank Hume, the defendant, and that the defendant, after he had endorsed the note in suit, entrusted and delivered it to Thomas L. Hume to get the signature of A. H. Pickrell, defendant's copayee, then the jury are instructed that said defendant is estopped from setting up the defense that the signature of A. H. Pickrell and his copayee is not genuine;

and if the jury further believe from the evidence that said
signature of A. H. Pickrell as copayee is in fact a forgery or
spurious, then their verdict must be for the plaintiff, it then
being immaterial whether the signature of A. H. Pickrell
to said words on the back of the note, 'We hold ourselves
responsible, jointly and severally, for the within note with-
out demand, notice or protest—Feb. 4, 1879,' be genuine or
not." Refused.

." 8. The defendant, Frank Hume, having admitted that
he endorsed the note in suit as one of the payees thereof,
and that on the day of its maturity he signed his name to
these words on the back of the said note: 'We hold our-
selves responsible, jointly and severally, for the within note
without demand, notice, or protest—Feb. 4, 1879,' if the
jury find from the evidence that William B. Bowie received
said note in suit from Thomas L. Hume before maturity,
and that the consideration thereof was the surrender to
Thomas L. Hume of other notes about to become due of said
Thomas L. Hume or Hall and Hume, endorsed by A. H.
Pickrell, the principal and interest whereof made up the
amount of the present note in suit, and that at the time of
receiving said note in suit and until after the day of its ma-
turity the said William B. Bowie believed that the signa-
tures thereon as payees were the genuine signatures of A.
H. Pickrell and Frank Hume, the defendant, and that the
                        name            the other
[signature] of A. H. Pickrell [as one] of the payees was writ-
ten, as it now appears, first on the back of said note when
the same was endorsed by Frank Hume as his copayee, then
the jury are instructed that said defendant is estopped from
setting up the defense that the signature of A. H. Pickrell
as his copayee is not genuine, even if the jury further believe
from the evidence that said signature of A. H. Pickrell, as
copayee, is in fact a forgery [or spurious, then their verdict
must be for the plaintiff, it then being immaterial whether
the signature of A. H. Pickrell to said words on the back

of the note in suit: ' We hold ourselves responsible, jointly and severally, for the within note without demand, notice, or protest—Feb. 4, 1879,' be genuine or not.]" Granted as modified, the modifications being in brackets.

"9. If the jury shall be satisfied from the evidence that when the defendant endorsed the note in suit, as joint payee thereof, the name of A. H. Pickrell, the other payee of the note, had been endorsed thereon, or that said defendant endorsed the said note as payee before the name of said A. H. Pickrell was endorsed thereon as payee, and that after the defendant so endorsed said note as payee thereof he handed it to Thomas L. Hume, the maker, to get the signature of A. H. Pickrell as copayee, and thereafter to be negotiated by Thomas L. Hume, and that the name of A. H. Pickrell, as payee, as it now appears endorsed on said note above the signature of the defendant, was written on said note, and that the note was then, before maturity, by said Thomas L. Hume, delivered to William B. Bowie, the original plaintiff, in lieu of and to take up other notes of said Thomas L. Hume then about to mature and owned and held by said Bowie; and if the jury shall also find from the evidence that on the day of the maturity of said note, to wit, on the 4th day of February, 1879, the said defendant, being requested, called at the office of John A. Baker and signed the agreement endorsed on said note in the words and figures following, to wit: ' We hold ourselves responsible, jointly and severally, for the within note without demand, notice, or protest—Feb. 4, 1879,' and then [*left the note in the custody of*] John A. Baker [*under an agreement between them and Thomas L. Hume to give opportunity to said Thomas L. Hume*] to procure the said A. H. Pickrell to also sign said waiver [*and thus avoid demand, protest, and notice*], and that said Baker sent said note by the hands of his clerk [*with the object of preventing Thomas L. Hume from getting possession of the note*], in company with Thomas L. Hume, the maker

of the note, to the house of said A. H. Pickrell, and
that said Thomas L. Hume [*leaving said clerk outside*]
took the note, and with it went into said house,
and then returned with the name of A. H. Pickrell
to said agreement as it now appears on said note; and if
the jury shall further find from the evidence that the
defendant procured and induced the said Thomas L. Hume
to sell out to the firm of Hume, Cleary & Co., of which firm
he was a member, the interest of said Thomas L. Hume in
said firm, with the understanding between said Thomas L.
Hume and said W. B. Bowie and the defendant that a part
of the purchase price for said grocery store to the extent of
about $15,000 in notes should be turned over to said Bowie,
and should be endorsed as a payment on the note now in suit,
and that said Thomas L. Hume, the said William B. Bowie,
and the defendant afterwards met together and completed
the said purchase, and in pursuance of said understanding
five notes of $3,000 each were made by the said firm of
Hume, Cleary & Co., and were endorsed by Thomas L.
Hume, and were then delivered to said Bowie, and the
amount thereof, to wit, $15,000, was endorsed as a payment
of that amount on said note as of the date of October 21,
1881, as it now appears on said note [*if the jury so find*],
and that the defendant was present during the making,
endorsing and delivery to said Bowie of said five notes, and
also when said endorsement of said payment was made on
the note in suit; and if the jury shall further find from the
evidence that some time about the month of November,
1881, the said William B. Bowie threatened to institute an
action on the note now in suit herein against the defendant,
and that the defendant thereupon visited him, said Bowie,
at his home in Prince George's County, Maryland, and
requested and persuaded said Bowie to forego his threatened
suit against the defendant, and instead to pursue the estate
of the said A. H. Pickrell, the joint payee and endorser of

said note in suit, in order to make as much out of the said
estate as might be, and that the defendant at the time
promised said Bowie that he would pay him whatever of
said note should not be made out of the said estate, and
that therefore said Bowie, in compliance with said request
of the defendant, abandoned his purpose of suing said de-
fendant at that time on said note, and that thereupon pro-
ceedings were instituted in the name of said Bowie upon
said note against the estate of the said A. H. Pickrell, and
that in consequence of said agreement of February 4, 1879;
endorsed on said note, and of the said payment of $15,000
made on said note as of October 21, 1881, and the under-
standing relative thereto, the said William B. Bowie, relying
upon the genuineness of the two signatures of said Pickrell
endorsed on said note, and in consequence of the said
promises and persuasions of the defendant made to said
Bowie by the defendant at the time of the said visit of the
defendant to the home of said Bowie, as aforesaid [*and the
conduct of the defendant in respect of said note*], the said Bowie
delayed suit on the said note against the defendant until
September 12, 1884 [*long after the deaths of the maker and
copayee in said note*], then these facts, if found by the jury,
will constitute an estoppel against the defendant, and he
can not deny the genuineness of either of the signatures of
said A. H. Pickrell endorsed on the note in this suit, and
the verdict must be in favor of the plaintiff." Granted as
modified by court. The modifications of this prayer are in
brackets and italics.

And the trial court voluntarily gave the following instruc-
tion:

"10. If the jury shall find that on the day of the matur-
ity of the note sued upon Thomas L. Hume, the maker, ap-
plied to Baker, the agent of the plaintiff, then holding the
note for collection, to let the note lie over, and said applica-
tion was rejected, but the agent, Baker, consented to accept

the waiver and stipulation contained in the memorandum of Feb. 4, 1879, which was then written on the back of the note, and not to make demand, protest and notice of dishonor upon said memorandum being signed by the parties whose names appear as endorsed thereon; and thereupon the defendant, being requested, went to the office of said Baker, and signed said memorandum and left the note in the custody of said Baker, with the understanding and arrangement between himself and Baker that said Baker would cause or procure the said memorandum to be signed by said A. H. Pickrell, and that for the purpose of carrying out said understanding and arrangement the said Baker confided the custody of the note to his own clerk, with instructions to the clerk that he should, either alone or together with Thomas L. Hume, the drawer, procure the signature of A. H. Pickrell to said memorandum, and that the clerk, as instructed, went with Thomas L. Hume to the house of Pickrell, and there delivered the note to Thomas L. Hume, who went into the house and returned with the note in its present condition, and that Pickrell did not sign the said memorandum, but the signature thereon appearing to be his was in fact forged and counterfeited, then the plaintiff is not entitled to recover; but, on the other hand, if the jury shall find that there was no such understanding and arrangement between Baker and the defendant, Frank Hume, but that said signing by the defendant was at the request of Thomas L. Hume, and that the object and purpose of said Baker in sending his clerk in company with Thomas L. Hume was solely as a precaution against Thomas L. Hume's depriving or attempting to deprive him, Baker, of the custody of the note, and what said Thomas L. Hume then did or proposed to do in respect to the procurement of Pickrell's signature to said endorsement and memorandum of waiver was on his own behalf and on behalf of the defendant and with the defendant's assent, then the plaintiff

is entitled to recover, even though the jury should find that the signature of the name of A. H. Pickrell to said memorandum of Feb. 4, 1879, is not the genuine signature of said Pickrell."

Exceptions were reserved by the plaintiff to the refusal of the court to grant the above prayers numbered 1, 2, 3, 5, 6 and 7; to the several modifications by the court of his prayers Nos. 8 and 9; and to the volunteer instruction by the court, designated above as No. 10.

Among the prayers for instruction offered by the defendant were the following, the first of which, No. 13, was granted, and the second of which, No. 15, was granted as modified, the modifications being in brackets:

"13. The plaintiff is not entitled to recover under any count of the original declaration filed in this cause." Granted.

"15. If the jury believe from the evidence that John A. Baker was the agent of the plaintiff at the time of the maturity of the note in suit, with authority from the plaintiff if said note was not paid when due to take the necessary steps to bind the endorsers by demand, protest, and notice, or by securing from the endorsers a waiver of demand, protest, and notice, and that the defendant, in pursuance of a suggestion from either said Baker or Thomas L. Hume, went to the place of business of said Baker to waive demand, notice and protest, and there signed the waiver on said note, written and prepared by said Baker with the understanding between him and said Baker that the signature of A. H. Pickrell should also be obtained by said Baker to said waiver, and that at said time the defendant believed and had reason to believe that the endorsement of A. H. Pickrell upon said note was his genuine signature, and that the object and purpose of said Baker and of said defendant in obtaining and giving said waiver was solely to avoid the necessity of demand, protest, and notice by having both

endorsers waive the same; and if they further believe from
the
the evidence that [neither of said] signature upon the back
of said note, purporting to be the genuine signature of A.
H. Pickrell, [as endorser of said note or] to said waiver, is
not his genuine signature, then the plaintiff is not entitled
to recover."

To the granting of the prayer numbered 13, and to the
granting of the prayer numbered 14, as modified, the plain-
tiff reserved exceptions.—REPORTER.]

*Mr. Enoch Totten* and *Mr. F. Snowden Hill* for the appel-
lant:

1. The note in suit is a negotiable promissory note. 1
Daniel on Neg. Inst. (4th Ed.), Secs. 41–48; *Mattison* v.
*Marks*, 31 Mich. 421; *Helmer* v. *Krolick*, 36 Mich. 373;
*Smith* v. *Ellis*, 29 Me. 422; *Carlon* v. *Kenealy*, 12 M. & W.
139; *White* v. *Smith*, 77 Ill. 351; *Roberts* v. *Snow*, 27 Neb.
425; *Riker* v. *Mfg. Co.*, 14 R. I. 402; 136 U. S. 269; 113 U.
S. 135; 108 Ala. 146.

2. The note offered in evidence contained on the back
thereof the words : " We hold ourselves responsible, jointly
and severally, for the within note, without demand, notice,
or protest," followed by the signatures of Frank Hume and
A. H. Pickrell. It was error to allow the defendant Hume
to testify that he signed said agreement after and upon the
promise by Baker to get thereto the signatures of A. H.
Pickrell, because said evidence contradicted the terms of the
writing and varied its legal imports and also because it
tended to show not non-delivery of the waiver, etc., but a
dependent collateral contract. Greenl. Ev., Sec. 275;
*Seitz* v. *Brewers*, 141 U. S. 516; *Martin* v. *Cole*, 104 U. S. 30;
*Brown* v. *Spofford*, 95 U. S. 474; *Forsythe* v. *Kimball*, 91 U.
S. 291; *Specht* v. *Howard*, 16 Wall. 564.

The testimony of Hume (assuming it to be correct),
taken in connection with the written agreement referred to,

did not constitute Baker the agent of Bowie, but the agent of the defendant, to procure the signature of Pickrell, and so, being immaterial, should have been stricken out on the motion made to that effect. *Hunter* v. *Fitzmaurice*, 102 Ind. 451.

3. The defendant, having testified that the memorandum at the bottom of the note, "with privilege of paying all or any portion any time before maturity," was not there when he endorsed the note as payee, the plaintiff moved the court to strike out said evidence, because said memorandum was an immaterial alteration; and because, if material, defendant's signature to the waiver, etc., on the back of the note ratified the alteration and estopped him from availing himself of it. Where a change has been made in a note, it is a question for the court to determine whether or not it amounts to an alteration. *Stevens* v. *Graham*, 7 S. & R. 505; *Bowers* v. *Jewell*, 2 N. H. 543; *Jones* v. *Ireland*, 4 Iowa, 63. Consent to an alteration may be given before the change is made, or it may be given afterwards by ratification. And it may be implied from the acts of the parties. *Morrison* v. *Smith*, 13 Mo. 234; *Cannon* v. *Grigsby*, 116 Ill. 151; *Clute* v. *Small*, 17 Wend. 238; *Bowers* v. *Jewell*, 2 N. H. 543; *Montgomery* v. *Crossthwait*, 90 Ala. 553. Where all the parties to a note do not consent to an alteration, those consenting are bound, while the rest are discharged. *Grimstead* v. *Briggs*, 4 Iowa, 559; *Bank, etc.,* v. *Lockwood*, 13 W. Va. 392; *Broughton* v. *Fuller*, 9 Vt. 373; *Wills* v. *Wilson*, 3 Oregon, 308; *Myers* v. *Nell*, 84 Penn. St. 369. An immaterial alteration may be treated as no alteration. *Moye* v. *Herndon*, 30 Miss. 120; *Derby* v. *Thrall*, 44 Vt. 413.

4. The defendant, as a joint endorser, was estopped to deny the genuineness of the signatures of his co-joint endorser. *Selser* v. *Brock*, 3 Ohio St. 308; *Green* v. *Rick*, 121 Pa. St. 130; *Stoner* v. *Millikin*, 85 Ill. 221; *U. S.* v. *Boyd*, 8 App. D. C. 448; *Helms* v. *Agl. Co.*, 73 Ind. 325. After a diligent examination of the reports, we have not been able to find a

single case where it has been decided that proof of forgery of a joint endorser's name upon a negotiable instrument, made after the signature of one joint endorser has been obtained thereon, relieves the one so signing. And the contrary has been expressly decided in *Hunter* v. *Fitzmaurice*, 102 Ind. 450.

5. The prayer of the plaintiff, that a verdict be directed in his favor, should have been granted. The plaintiff was certainly entitled to recover upon his evidence, and the defendant's evidence estopped him from denying the two signatures of A. H. Pickrell upon the back of the note in suit, and so left him without any defense. *Hardy* v. *Bank*, 51 Md. 589; *Trustees* v. *Smith*, 118 N. Y. 634; *Corser* v. *Paul*, 41 N. H. 24.

6. Where a pre-existing debt has been actually and absolutely extinguished in consideration of the transfer of negotiable paper, the transferee is a holder for value within the rule protecting such a holder against prior equities. *Mayer* v. *Heidelbach*, 123 N. Y. 332.

7. An endorser of a bill of exchange, with notice of such facts as would be sufficient to excuse the want of notice to the drawer, whether it be that the bill was drawn without funds or other circumstances from which the drawer would have no right to anticipate payment, would be placed upon substantially the same footing as the drawer, and whatever would suffice to excuse the omission to notify the latter, would be a valid excuse in case of an endorser with notice of the facts. *Mobley* v. *Clark*, 28 Barb. 390.

Where the holder of a note made a valid and binding contract of extension with the maker, and then transferred the note by endorsement to a purchaser for value, before maturity, without notice of such contract of extension, he was held, by the perpetration of this fraud upon his endorsee, to have rendered notice of dishonor to himself, as endorser, unnecessary. *Williams* v. *Brobst*, 10 Watts, 111; *Amoskeag Bank* v. *Moore*, 37 N. H. 539. It has been held

that notice is not necessary to bind the endorser of a note which was void at its inception. *Chandler* v. *Mason*, 2 Vt. 193; *Turnbull* v. *Boyer*, 40 N. Y. 456.

If the defendant's testimony to the effect that Pickrell's signature as joint payee was forged be believed, then there was no need of protesting Pickrell, or getting his waiver. The defendant, under the circumstances of the case, is estopped from requiring it, and from setting up the agreement he testified to between himself and John A. Baker, to defeat his signature to the waiver, etc., on the back of the note. That waiver must certainly have the same force and effect on Hume as if he had been regularly protested, for he escaped protest thereby; and, if it be true that generally both joint payees must be protested or each is discharged (26 Md. 521; Sec. 827 R. S. D. C.; 95 U. S. 639; 95 Tenn. 619; 121 Pa. St. 130), yet Hume became bound, being estopped to require protest of his joint payee by his evidence of the forgery of said joint payee's endorsement. When Frank Hume endorsed the note in suit and delivered it to Thomas L. Hume, and so enabled him to practice the fraud, if any, upon Wm. B. Bowie, an estoppel began which runs through the whole case, receiving tributaries in its progress and ever growing larger and larger.

8. The common law regulates the rights and liabilities of joint endorsers in the District of Columbia, and at common law it is the settled doctrine that in case of a joint obligation, if one of the obligors die, his representative is, at law, discharged, and the survivor alone can be sued. 15 Wall. 140; 49 N. Y. 388; 2 Vern. 98; 2 Atk. 31; 2 Wash. (Va.) 136; 3 Drew Ch. R. 177. And it seems to be equally well settled that if the joint obligor so dying be a surety not liable for the debt irrespective of the joint obligation, his estate is absolutely discharged, both at law and in equity, the survivor only being liable. 49 N. Y. 388; 2 Cases in Ch. 22.

And this is the case even though in the surety's lifetime there were a joint judgment against him and his coprin-

cipal.   67 N. Y. 160.   In such cases where the surety owes no debt outside and irrespective of the joint obligation, the contract is the measure and limit of his liability.   He signs a joint contract and incurs a joint liability, and no other, and dying prior to his co-maker, the liability attaches to the survivor alone.   Daniel on Negotiable Insts., Sec. 1298.

*Mr. W. D. Davidge, Mr. S. T. Thomas* and *Mr. A. B. Duvall* for the appellee:

1. There was no error in the action of the court in admitting the testimony of defendant as to transactions and agreements with Baker, the agent of William B. Bowie, in regard to the collection of the note in suit.   The provision of the statute that neither party shall be allowed to testify to statements by, or transactions with, the testator, etc., does not extend to transactions with agents of the deceased person.   Rapalje on Witnesses, 214; *Pratt* v. *Elkins,* 80 N. Y, 198; *Andrews* v. *Fendall,* 7 Mack. 311; 3 Jones, Evidence. Sec. 795, note 10.

2. It was proper to allow the appellee to testify that he signed his name below that of A. H. Pickrell to the waiver on the back of the note, on the promise of Baker to get the signature of Pickrell.   The holder of negotiable paper who enters into agreements or transactions with makers and endorsers affecting its validity can not invoke protection as against the infirmity he has aided to create.   *Davis* v. *Brown,* 94 U. S. 423.   In admitting this testimony the court did not admit parol evidence to vary the written contract.   The evidence related to a new and collateral agreement.

3. The alteration at the bottom of the note in suit was material, and operated to restrict the negotiability of the note, and to affect the liability of the parties to it.   The appellee having testified that said memorandum was not there when he signed his name to the back of the note, an issue of fact thereupon arose which was proper to go to the jury.

There could be no ratification which would operate as an estoppel against the appellee unless he signed the waiver with knowledge of the addition to the note. The reservation of such privilege destroyed the negotiability of the note. *Story* v. *Lamb*, 52 Mich. 525; *Stultz* v. *Silva*, 119 Mass. 137; *Mahoney* v. *Fitzpatrick*, 133 Mass. 157; *Bank* v. *Green*, 57 Md. 603. A change in the time of payment of a note whether such change delays, accelerates or preserves in legal effect the time specified or implied for payment, constitutes a material alteration and avoids the note. 2 Dan. Neg. Inst., Sec. 1317; *Miller* v. *Gilleland*, 19 Pa. St. 119.

4. The testimony of a witness at a former trial, disabled to testify by death, insanity or other cause, is admissible at a subsequent trial. 1 Greenl. Ev., Sec. 163; *Reynolds* v. *United States*, 94 U. S. 155; *Bergin* v. *People*, 17 Ill. 426. The same cause that prevented the original plaintiff from testifying at the last trial, that is, his death, also under the statute disqualified the defendant as to statements and declarations. The plaintiff availing himself of the benefit of the rule of evidence sought to exclude the defendant from the same benefit. The plaintiff objected both to the oral evidence of the defendant at the trial and his evidence at the former trial—though given under oath and after cross-examination. The essence of the statute is equality and that was absolutely preserved by the ruling. *Munn* v. *Owens*, 2 Dill. (U. S.) 477; *Coughlin* v. *Hausseler*, 50 Mo. 126; 29 Am. & Eng. Encyc. of L., (2d Ed.) 367–8; 3 Jones on Ev., Sec. 792.

5. The action of the court in refusing to strike out the testimony of the appellee's witnesses as to the non-genuineness of the two signatures of A. H. Pickrell upon the note in suit was not error. The endorsement of one of two payees does not warrant the genuineness of the first. *Foster* v. *Collner*, 107 Pa. St. 310; *Lane* v. *Stacy*, 8 Allen, 41; 1 Dan. on Neg. Inst., Secs. 672, 684. If several persons not partners are jointly named as payees the note or bill can

only be negotiated by the endorsement of all. *Rhyner* v. *Feickert*, 92 Ill. 305; *Carvick* v. *Vickery*, 2 Doug. 653; Story on Bills, Sec. 197; *Sayer* v. *Frick*, 7 Watts & S. 383; Story on Prom. Notes, Sec. 125; 1 Dan. Neg. Insts., Secs. 701*a* and 704. The defendant was an accommodation endorser. He endorsed the note in the hands of the maker with the knowledge and for the accommodation of the holder, who was thus chargeable with notice of the character of the instrument. *Bank* v. *Bank*, 95 U. S. 557; *Bank* v. *Remsen*, 43 F. R. 226; 1 Am. & Eng. Encyc. of L. (2d Ed.) 367–8.

The contract between the makers of the note and the payees is in fact joint. And the signatures of both of the latter were necessary to pass title by endorsement. Not only was the contract of the endorsers joint, but they were accommodation endorsers. Each as against the other was entitled to the legal and equitable right of contribution. The case is not one of several successive endorsers, each contracting separately, but of joint payees and joint endorsers. *Macdonald* v. *McGruder*, 3 Pet. 470. In the latter case the right of contribution follows from the very nature of the contract, as it is thereby meant that the liability shall fall on not one, but on both. When the contract of endorsement is joint and the endorsers are not partners, it is the duty of the holder to protest as to all and give notice as to all in order to hold any one of them liable. 4 Am. & Eng. Encyc. of L. 414; 2 Dan. Neg. Inst. 999*a* and cases; *Bank* v. *Keech*, 26 Md. 521; *Gantt* v. *Jones*, 1 Cr. C. C. 210; *Shepard* v. *Hawley*, 1 Conn. 367; *Willis* v. *Green*, 5 Hill, 232; *Sayre* v. *Frick*, 7 W. & S. 383; *Bank* v. *Willis*, 8 Met. 504; *Miser* v. *Trovinzer*, 7 Ohio St. 281.

To enable the plaintiff to recover it was necessary for him to establish by evidence the obligation by endorsement and the fulfillment of the condition of that obligation by showing demand, protest and notice, or its equivalent—waiver. This is indeed exactly what he undertook.. The declara-

tion avers the joint endorsement, and the waiver signed by both the endorsers. It was incumbent upon him to sustain these averments at the trial. If the evidence showed that Pickrell did not sign the waiver, then the essential averment that he did was not sustained, and there was an end to the case.

6. The only estoppel that could arise against the appellee was in respect of the signature of Pickrell to the waiver. As to the original endorsement of Pickrell he was one of the payees and he was bound to endorse in order to negotiate the note. As to the waiver, the appellee's contention was that Baker agreed to get the signature of Pickrell, and that in consideration of that agreement he (the appellee) signed the waiver; this was controverted by the appellant, and an issue of fact thereupon arose which placed it beyond the province of the court to direct a verdict. So that the request that the court direct a verdict was properly overruled. The doctrine of equitable estoppel is invoked by the appellant, and appears to be his main reliance in this case. Equitable estoppel, or, as it is sometimes called, estoppel *in pais*, is based on knowledge. *Clinton* v. *Haddam*, 50 Conn. 84; *Davis* v. *Bagley*, 40 Ga. 181; *Gray* v. *Agnew*, 95 Ill. 315; *Walters* v. *Connelly*, 59 Iowa, 217; *Proctor* v. *Machine Co.*, 137 Mass. 159; *Van Ness* v. *Hadsell*, 54 Mich. 560. The vital principle of equitable estoppel is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. It involves fraud and falsehood. *Dickerson* v. *Colgrove*, 100 U. S. 580. It nowhere appears in this record that the appellee, either by his language or conduct, led Bowie to do anything that he would not otherwise have done, or to refrain from doing anything he might have done to collect his note, after knowledge or suspicion of the forgery of A. H. Pickrell's signature.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

At the trial many exceptions were noted by the plaintiff, some of them not very material to be reviewed on appeal. The plaintiff, the appellant, has, in a general way, assigned a great many errors in the rulings of the court below, but they are so defectively and indefinitely stated that it is difficult to determine what are the particular questions intended to be presented for consideration. The defendant, the appellee, however, has treated the assignment of errors as presenting certain questions, and has made no motion to dismiss or affirm, for the want of proper assignment of errors under the rule. We shall, therefore, consider the salient points of the case, upon the supposed errors as stated in the brief of the defendant, the appellee.

1. The first question proper to be considered is, whether the note sued on was a valid negotiable promissory note, upon which the defendant can be held liable as endorser?

It is contended by the defendant that the memorandum appearing at the foot of the note was a material alteration of the body of the note, and destroyed its negotiability, and being a material alteration, it exonerated the defendant from all liability thereon. The court, by its fourteenth instruction granted at the instance of the defendant, directed the jury " that if they should find that at the time the defendant placed his name on the back of the note as endorser and returned the note to Thomas L. Hume, the note upon its face was a perfect instrument, and that subsequently, and without the knowledge and consent of the defendant, the said note was, *before its maturity*, altered by Thomas L. Hume by adding thereto the memorandum, 'with the privilege of paying all or any portion any time before maturity— Hall & Hume,' the said alteration *was a material alteration*, and the plaintiff is not entitled to recover unless the jury further find that the said memorandum was on the paper at

the time when the defendant signed the memorandum of waiver of February 4th, 1879."

This instruction was not only calculated to confuse the jury, but was erroneous in several particulars.

The note had matured on the very day that the waiver of protest and notice was signed by the defendant, and if the memorandum had been written at the foot of the note before that time, then, according to the instruction of the court, the signing of the waiver would estop the defendant from denying the fact of the existence of the memorandum at the foot of the note at that time. There is no substantial or reliable evidence that the memorandum was appended after the maturity of the note, nor would there be any reason or legal effect in such memorandum, if annexed to the note after its maturity. The effect of the memorandum was only intended to secure a privilege while the note was running to maturity, not after maturity; and it therefore carries intrinsic evidence that it was appended to the note before maturity. The only evidence upon the subject, if it can be called evidence, is that given by the defendant himself. In answer to the question, "When you signed the waiver on the back of that note, do you remember whether you examined the face of it?—Answer. I do not think I made any close examination of it. Q. Are you able to say whether that privilege was on the face of the note then?—A. I do not remember. I am satisfied I did not see it."

This evidence is wholly insufficient to establish the fact of the time when the memorandum was written, and, indeed, it is *quite insufficient* to rebut the legal presumption that the memorandum was appended contemporaneously with the execution of the note, and as a constituent part thereof. 1 Dan. Neg. Inst., Secs. 152, 153, 154, 155, and the cases there referred to. And if we treat the memorandum, signed by the makers of the note, as having been made contemporaneously with the note (it being written at the foot of the note, with no other reference to date than that at the top of the

note), then, upon principle, and according to authority, such memorandum would constitute a part of the note, and, with that memorandum incorporated as part of the note, the note would be properly described in the special counts of the amended declaration.

If the memorandum be regarded as part of the note, then the note thereby was made payable on *or before* the time mentioned for maturity, at the option of the makers; and it is now well settled that the employment of such terms in a promissory note will not affect its negotiability. In the case of *Mattison* v. *Marks*, 31 Mich. 421, the note in question in that case was payable on *or before* a certain day, and Mr. Justice Cooley, in delivering the opinion of the court, said: " The legal rights of the holder are clear and certain; the note is due at a time fixed, and it is not due before. True, the maker may pay sooner if he shall choose, but this option, if exercised, would be a payment in advance of the legal liability to pay, and nothing more. Notes like this are common in commercial transactions, and we are not aware that their negotiable quality is ever questioned in business dealings. It ought not to be questioned for the sake of any distinction that does not rest upon sound reason." The same principle is fully stated and maintained by the Supreme Court of Illinois, in the case of *Dorsey* v. *Wolff*, 142 Ill. 589, upon review of many cases.

But this question is definitely settled by the Supreme Court of the United States, in the case of *Chicago Railway Co.* v. *Merchants' Bank*, 136 U. S. 268. In that case, it was held, that the negotiability of the instrument was not affected by the fact that it might, at the option of the holder, and by reason of the default of the maker, become due at a date earlier than that fixed. In the opinion of the court it is said:

"Upon like grounds it has been held that the negotiability of the note is not affected by its being made payable on or before a named date, or in instalments of a particular

amount.    In *Ackley School District* v. *Hall*, 113 U. S. 135,
140, it was held that municipal bonds, issued under a stat-
ute providing that they should be payable at the pleasure of
the district at any time before due, were negotiable; for, the
court said : 'By their terms, they were payable at a time
which must certainly arrive; the holder could not exact
payment before the day fixed in the bonds; the debtor in-
curred no legal liability for non-payment until that day
passed.'"

The court then refers to and quotes with approval the
passage in Judge Cooley's opinion, which we have already
quoted, in *Mattison* v. *Marks*, 31 Mich. 421, and several other
cases, among them the case of *Carlon* v. *Kenealy*, 12 M. &
W. 139.    And in the case of *Ricker* v. *Sprague Mfg. Co.* 14 R.
I. 402, also referred to by the Supreme Court, it was held
that a reservation in a note of the right to pay it before ma-
turity in instalments of not less than five per cent. of the
principal at any time the semi-annual interest became pay-
able, did not impair its negotiability; the court observing
that a note is negotiable if one certain time of payment is
fixed, although the option of another time of payment be
given.

But suppose the memorandum appended to the note here
in question was appended by the makers, or one of them,
at a time subsequent to the making of the note, and after
the note had been endorsed by the defendant, it does not
follow, as matter of course, that the defendant was thereby
released of liability on his endorsement of the note.    It is
not shown by the slightest proof that the memorandum was
appended to the note *after* the note was delivered to Bowie,
the *bona fide* holder for value; nor is it pretended that there
was any mutilation, or spoliation, or change whatever, in the
terms of the note as it was originally made and signed.
The memorandum, while inscribed on the same piece of pa-
per at the foot of the note, is entirely separate and distinct
from the note as originally made ; and if this memorandum

was appended after the note was made, and after it had been endorsed by the defendant, it was done without authority, and the memorandum should be treated as wholly immaterial and as not forming any part of the note, as against the defendant, the endorser.

It is certainly true that either party to the note may show by parol evidence the true state of the case, and may, therefore, show when, the person by whom, and the circumstances under which the memorandum was made; and if it be shown that the memorandum was appended at a time and under such circumstances as to make it clear that it was not, by any fair legal intendment or construction, made a part of the note, the negotiability of the note was not thereby impaired, nor was the liability of the endorser in any manner affected. *Odiorne* v. *Sargent*, 6 N. H. 410. The memorandum in such case is simply collateral, and therefore immaterial and inoperative as against the defendant, the endorser. Smith's Merc. Law (Ed. 1850), 329, 330, and cases cited.

There are many cases in the reports where *memoranda* written at the foot, as in this case, or on the back of promissory notes or other negotiable instruments, have been held to be immaterial or as not affecting the negotiability of such instruments, as against the subsequent endorsers. As an instance of the application of this principle we have the case of *Stone* v. *Metcalfe*, 4 Camp. 217, where it was held that a memorandum or stipulation endorsed on a promissory note by the payee, was not to be taken as part of that instrument, *without evidence that it was written at the time when the note was made.* In that case the memorandum made upon the note was by the payee, in which he directed, in case of his death, that his executor should permit and suffer the sum secured by the note to remain on the security of the note, so long as it might be convenient to the maker, without suit at law or in equity, "*until three years after my death, provided he continues to pay the interest thereof regularly*

*as the same becomes due.*" The defense turned upon the effect of this memorandum endorsed on the note. But Lord Ellenborough held, "that if the memorandum was subsequently written when the note had been perfected and delivered in its absolute state, it could not be considered as a part of that instrument, although it chanced to be inscribed upon the same piece of paper."

And so where a drawer, who held a bill endorsed in blank by the payees, wrote under his signature: "Left with Mr. B. (the plaintiff) as collateral," it was held to be no part of the instrument, and was immaterial. *Bachellor* v. *Priest,* 12 Pick. 399. And where the last endorsee of an accommodation bill made a memorandum at the foot directing its proceeds to be credited to the drawer, it was held no part of the bill, and its obliteration of no consequence. *Hubbard* v. *Williamson,* 5 Ired. 397. Therefore, if the memorandum be treated as not constituting a part of the note, and as being immaterial to the liability of the defendant as endorser, it follows that there was error in instructing the jury that there could be no recovery on any of the counts in the original declaration in the cause.

2. Then, as to the question respecting the genuineness or forgery of the signature of A. H. Pickrell, on the note, and the effect thereof.

The note, as we have seen, was made payable to A. H. Pickrell and Frank Hume, the defendant, and the latter is sued as endorser. These payees of the note were not partners, but they were joint payees, and they became joint accommodation endorsers, and though the endorsement upon the note is not in form joint, yet we must suppose that the endorsement was intended to transfer a joint title; and though the names of the payees appear on the note separately and successively, still, upon the assumption that the signatures are genuine, the parties are to be treated as joint endorsers. And, being joint endorsers, in order to fix their liability, notice of the dishonor of the paper at maturity was

required to be given to each of them, and notice to one only would be without effect as to him.    *Willis* v. *Green,* 5 Hill,. 232; *Bank of United States* v. *Bierne,* 1 Grat. 234; *Shepard* v. *Hawley,* 1 Conn. 368; *People's Bank* v. *Keech,* 26 Md. 521; 2 Dan. Neg. Inst., Sec. 999.

The notice of dishonor to each endorser was required in order to preserve the right of contribution as between them. Demand, protest and notice, however, may be waived, but to make such waiver effectual it must have been by all the endorsers interested in the question of contribution *inter sesse.*    In this case, such waiver was supposed to have been effected; but one of the principal questions in the case has arisen upon the facts attending the procurement of that supposed waiver as to one of the named endorsers.    In regard to the signature of the defendant to the waiver written upon the note there is no question or dispute, but in regard to the genuineness of the signature of A. H. Pickrell, the other payee named in the note, and whose name appears on the note as first endorser, there is much controversy, and a considerable conflict in the evidence.    The right of the plaintiff in the note is not based, as would seem to be supposed, on the terms of the waiver endorsed on the note at its maturity, as an independent contract or undertaking, but upon the endorsement of the note by the payees, and the matter of the waiver is important only as means of making the original endorsement effectual.

If, before the delivery of the note to Bowie, the holder for value, the defendant placed his name upon the note as endorser, and at the time of such endorsement by the defendant the name of Pickrell appeared upon the note as first endorser, and Bowie, becoming holder, took the note upon the faith of the genuineness of the endorsements of both Pickrell and the defendant, then the defendant would be estopped to deny the genuineness of the signature of Pickrell as against the *bona fide* holder of the note.    And whether Pickrell's signature in the endorsement be genuine or not

(and there is no presumption that it was forged), if the
waiver written on the back of the note at maturity was
signed by Pickrell in his own proper hand, or by the hand
of another authorized by him, all question as to the genu-
ineness of the signature in the endorsement would be re-
moved, leaving no question as to the defendant's liability on
his endorsement. The signature to the waiver would be a
full adoption of the signature to the endorsement.

These questions were all fully and fairly submitted to
the jury by the instructions that were given by the court.
We need not repeat the terms of the several instructions
granted in respect to these questions; but in granting the
fourth prayer of the plaintiff, and the eighth prayer of the
plaintiff, *as modified by the court,* and in the volunteer in-
struction given by the court, designated as instruction 10,
we think the subject was quite fully and fairly covered.
And, in respect to the other prayers of the plaintiff, Nos. 1,
2, 3, 5, 6 and 7, we think there was no error committed in
refusing to grant them. Nor do we find error by the court
in granting the fifteenth prayer offered by the defendant, as
that prayer was modified by the court before granting it as
an instruction.

3. With respect to the question of estoppel presented by
the ninth prayer of the plaintiff, which was granted with
certain slight modifications as to its structure, in reference
to the facts of the case, we do not perceive that, in the modi-
fications made by the court, there was any such substantial
change made as furnished ground for an exception by the
plaintiff. The principle of the prayer as presented, founded
upon the facts enumerated, was substantially preserved in
the instruction as given, and the plaintiff, therefore, had no
cause for exception.

4. With respect to the question of the competency of the
defendant to testify as to the transaction that was had with
Baker, the agent of Bowie, the holder of the note, in regard
to the circumstances under which the waiver was written

by the agent and signed by the defendant, and the understanding for obtaining the signature of Pickrell to the waiver, we think the ruling of the court was proper. It is true, Bowie, the original holder of the note, had died since the former trial of the cause in 1888, and the present plaintiff, as administrator, had been substituted in his place as plaintiff on the record. At the time of the transaction with Baker, the agent, Bowie, the principal, was alive. But he was not present, and the transaction was exclusively as between Baker, the agent, and the defendant. Baker was introduced as a witness by the plaintiff to give his version of the transaction, and it would seem to be but fair and reasonable that the defendant should be allowed to give his version also; and the only question is, whether the terms of the statute are so imperative in prescribing the disqualification of parties to a cause to testify, under the circumstances of this case, as to exclude the defendant.

The statute (Sec. 858, R. S. U. S.) provides that "In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action, because he is a party or interested in the issue tried: *Provided,* that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, *as to any transaction with, or statement by, the testator, intestate,* or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." As will be observed, the exclusion of parties as witnesses in the cases provided for is not *absolute and unqualified;* but the court may, in its discretion, in any case where justice would appear to require it, direct that the party otherwise excluded should be examined.

The great and leading principle of this and similar statutory provisions, is to preserve entire mutuality as between the parties, that each shall be competent, and required if necessary, to state his version of the transaction under in-

vestigation. It is important, therefore, to look to the parties in fact and who are actively engaged in the transaction, in order to get the real facts as they transpired, and as they may be remembered by all parties concerned. If the transaction involved has been conducted by an agent, and that agent be a competent witness to support his version of what occurred, there can be no good reason for excluding the other party to the transaction; and there does not appear to be anything in the terms of the statute to require such construction. We think the statute should receive a liberal construction in order to maintain the principle of mutuality, and that seems to be the construction adopted by other courts where similar statutes prevail.

We think the court committed no error in allowing the defendant to testify. *Pratt* v. *Elkins*, 80 N. Y. 198; *First Nat. Bank* v. *Payne*, 111 Mo. 291, 293–4; *Harris* v. *Bank*, 22 Fla. 501; 3 Jones, Ev., Sec. 794, note 10.

5. We come lastly to the question as to the admissibility of the testimony given by the defendant on the former trial and reported stenographically, and when Bowie, the then plaintiff, was present and was also examined as a witness for himself. The right of cross-examination in respect to both parties was fully exercised; and the present plaintiff at the last trial produced and read in evidence the testimony given on the former trial by the then plaintiff Bowie, as the testimony of a deceased witness. The testimony of the defendant then given is objected to upon the ground that the party giving the evidence on the former trial is still living. But we do not think the objection a sound one. If the defendant, like his original adversary, had been dead at the last trial, there could have been no question of the admissibility of his testimony given on the former trial. But though still in life, there has supervened a cause of disqualification to his right to testify as a living witness without any fault or agency of his own. As matter of principle, in what respect does the case differ from that of a disquali-

fying interest acquired by a witness after he has testified in a cause, and subsequently, on a new trial, his testimony is found to be essential to the party for whom he originally testified? In such case it has been repeatedly held by courts of chancery that the deposition or testimony of such witness, given on a former hearing, is admissible; and it is difficult to perceive any reason for refusing to apply the same principle in actions at law. Professor Greenleaf, in his work on Evidence, Vol. 1, Sec. 168, states his conclusion upon the subject thus: "If, in cases of disqualifying interest, the witness has *previously given a deposition in the cause*, the deposition may be read in chancery, as if he were since deceased, or insane, or otherwise incapacitated. It may also be read in the trial at law of an issue out of chancery. In other trials at law, no express authority has been found for reading the deposition; and it has been said, that the course of practice is otherwise; but no reason is given, and the analogies of the law are altogether in favor of admitting the evidence. And as it is hardly possible to conceive a reason for the admission of prior testimony given in one form, which does not apply to the same testimony given in any other form, it would seem clearly to result, that where the witness is subsequently rendered incompetent by interest, lawfully acquired, in good faith, evidence may be given of what he formerly testified orally, in the same manner as if he were dead; and the same principle will lead us farther to conclude, that, in all cases where the party has, without his own fault or concurrence, irrecoverably lost the power of producing the witness again, whether from physical or legal causes, he may offer the secondary evidence of what he testified in the former trial. If the lips of the witness are sealed, it can make no difference in principle, whether it be by the finger of death, or the finger of the law."

We entirely agree with the learned author, in the principle and reason stated by him, in the passage just quoted from his very authoritative work; and we are clearly of

opinion that the testimony of the defendant given on the former trial, when the then plaintiff was living and was examined as a witness, was properly admitted by the court, and therefore the exception taken to its admission ought not to be sustained.

But for the errors that occurred in granting the thirteenth and fourteenth prayers of the defendant, offered for instruction to the jury, we find it necessary to reverse the judgment appealed from, and remand the cause for a new trial; and it is so ordered.

*Judgment reversed and cause remanded.*